```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
―――――――――――――――――――――――――――――――

IRINA GALANOVA,

                Plaintiff,         23-cv-183 (JGK)

     - against -                    **MEMORANDUM OPINION AND ORDER**

MORGAN STANLEY SERVICES GROUP INC.,
ET AL.,

                Defendants.

―――――――――――――――――――――――――――――――

**JOHN G. KOELTL, District Judge:**

    The defendants -- Morgan Stanley Services Group Inc. ("Morgan Stanley") and Magaly Denis-Roman -- have moved to compel the plaintiff, Irina Galanova, to arbitrate her claims of discrimination, retaliation, and wrongful termination pursuant to 42 U.S.C. § 1981 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 et seq.[1] At issue is whether the parties entered into a validly formed and enforceable arbitration agreement.

    The defendants filed their motion to compel arbitration on June 20, 2023. ECF No. 21. The Court directed the plaintiff to respond to the motion by July 11, 2023. See ECF No. 24. On July 28, 2023, the Court extended the time for the plaintiff to

―――――――――――――――――

[1] The plaintiff asserts 42 U.S.C. § 1982 as a basis for a claim in her amended complaint. See Am. Compl., ECF No. 9 at ¶ 1. However, she does not allege any facts pertaining to that claim, and that is the only mention of section 1982 in the amended complaint. See id. passim.

respond to the motion to August 18, 2023, and advised the plaintiff that "[i]f the plaintiff fails to file a response by the August 18, 2023 deadline, the motion will be decided on the current papers." ECF No. 26. The plaintiff did not file a response by the August 18, 2023 deadline and has not filed a response to date. On September 7, 2023, this Court issued an Order stating that the defendants' motion to compel arbitration will be decided on the current papers. ECF No. 27.

For the reasons explained below, the defendants' motion to compel arbitration and stay this case is **granted**.

**I.**

The following facts are drawn from the declaration and exhibits submitted by the defendants.

The plaintiff was an employee of Morgan Stanley in New York City, see ECF No. 23 ("Krentzman Decl.") at ¶¶ 21-22, from November 1, 1999, until January 12, 2022, see Am. Compl., ECF No. 9 at ¶¶ 7, 17.[2] In 2001, during the plaintiff's term of employment, Morgan Stanley launched an internal employee dispute resolution program entitled Convenient Access to Resolutions for Employees ("CARE"). See Krentzman Decl. ¶¶ 21-22. From 2009 to 2015, the CARE guidebook stated:

> If you are a current or former employee who was registered at any time during your employment with

---

[2] The defendants do not include the plaintiff's dates of employment in their declaration or exhibits.

2

> Morgan Stanley and you wish to pursue a statutory employment discrimination claim[,] ... you may, (1) proceed to arbitration, through (a) the arbitration forums administered by JAMS or AAA, if Morgan Stanley agrees, or (b) a self-regulatory organization (SRO), such as FINRA, or (2) go to court. For all other employment claims, registered employees will continue to be required to submit their claims to binding arbitration as required by their Form U-4 Agreement.

Krentzman Decl., Ex. 1, ECF No. 23-1 at 9-10. Accordingly, registered employees had the option of pursuing employment discrimination claims through arbitration by various alternative-dispute-resolution services or by filing suit in court. However, the 2009-2015 CARE Guidebook also explained:

> **Changes to CARE**
>
> Upon notice, the terms of CARE may change or be discontinued. Any material changes made to CARE will be announced in advance of their effective dates and will then become equally binding upon you and the Firm. In the event of such a change, pending claims will be governed by the Program in effect at the time of filing of the Request for Mediation/Arbitration Form(s) with the Program Administrator.

Id. at 14.

In 2015, Morgan Stanley announced that CARE would be expanded to make arbitration of all covered claims -- including employment discrimination claims -- mandatory for all employees. See Krentzman Decl. ¶ 6. Starting on May 20, 2015, Morgan Stanley notified employees of the expansion of the CARE program through an email to each employee's individualized work email

3

account. See id. The plaintiff received the notification email on May 20, 2015. See id. ¶ 7. The email's subject line read, "Expansion of CARE Arbitration Program." It provided, in relevant part:

> Current registered employees are required to arbitrate most workplace claims under existing FINRA rules, and given the success of the CARE program, Morgan Stanley is announcing the expansion of CARE and modifications to related Firm policies and programs to extend arbitration obligations for all US employees – registered and non-registered. Effective June 19, 2015, arbitration under the CARE Arbitration Program will be mandatory for all employees in the U.S., and all covered claims between the Firm and employees will be resolved through final and binding arbitration on a non-class, non-collective and non-representative action basis as more fully described in the Arbitration Agreement and CARE Guidebook. Please review the Arbitration Agreement [hyperlink] and CARE Guidebook [hyperlink] . . . .
>
> **Next Steps**
>
> By continuing your employment with Morgan Stanley, you accept and agree to, and will be covered and bound by the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook, unless you elect to opt out of the CARE Arbitration Program by completing, signing and submitting an effective CARE Arbitration Program Opt-Out Form [hyperlink] by June 19, 2015 . . . . If you remain employed and do not timely complete, sign and submit an effective CARE Arbitration Program Opt-Out Form, the Firm's records will reflect that you have consented and agreed to the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook....
>
> Your decision to opt out of the Arbitration Agreement and the CARE Arbitration Program will not adversely affect your employment status with the Firm.

> If you have questions about the Arbitration Agreement or the arbitration provisions in the CARE Guidebook, email carebox@morganstanley.com.

Krentzman Decl., Ex. 2, ECF No. 23-2 at 1-2. Thus, the email notified employees that (1) starting June 19, 2015, all employees would be required to arbitrate all covered claims through the CARE program under the new Arbitration Agreement (the "Agreement"); (2) unless an employee chose to opt out of CARE, the employee's continued employment would serve as a manifestation of assent to the program; and (3) employees could opt out by timely submitting an opt-out form. The plaintiff was not on a leave of absence at the time Human Resources sent the email, and the email did not trigger a reply out of office message from the plaintiff. See Krentzman Decl. ¶ 7. The plaintiff did not opt out of the CARE Arbitration Program and continued to work at Morgan Stanley for over six years after receiving notice of the revised CARE Arbitration Program. Krentzman Decl. ¶¶ 17-18.

## II.

A court considering whether to compel arbitration pursuant to a purported arbitration agreement must decide "(1) whether there exists a valid agreement to arbitrate at all under the contract in question and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the

arbitration agreement."[3] Hartford Accident & Indemn. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001). The question of whether parties have contractually bound themselves to arbitrate a particular dispute involves an "interpretation of state law." Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 26 (2d Cir. 2002). Thus, "[w]hen deciding whether the parties agreed to arbitrate a certain matter," courts generally "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also UBS Secs. LLC v. Prowse, No. 20-cv-217, 2020 WL 433859, at *2 (S.D.N.Y. Jan. 27, 2020).

### A.

The first issue is whether there is a valid contract that binds both parties. In this case, there was such a contract.

"To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004). Mutual assent need not be signified in writing; "[t]he manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract." Id. Under New York law, "[a]n employee may consent to a modification to the terms of

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

6

employment by continuing to work after receiving notice of the modification." Manigault v. Macy's E., LLC, 318 F. App'x 6, 8 (2d Cir. 2009); see also Isaacs v. OCE Bus. Servs., Inc., 968 F. Supp. 2d 564, 571 (S.D.N.Y. 2013) ("Under New York law, employee handbook revisions are binding when an employee continues to work after receiving notice of the revisions."). Under those circumstances, "the employee's continued employment serves as an objective manifestation of the employee's intent to be bound." Lockette v. Morgan Stanley, No. 18-cv-876, 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018).

There is a presumption in New York law that a party has received an email when it is delivered to the party's email address in accordance with regular office procedures. See Clearfield v. HCL Am. Inc., No. 17-cv-1933, 2017 WL 2600116, at *2 (S.D.N.Y. June 15, 2017); see also Meckel v. Cont'l Res. Co., 758 F.2d 811, 817 (2d Cir. 1985). To rebut this presumption, a party must produce admissible evidence showing that the email was not sent or was not received. Cf. Weiss v. Macy's Retail Holdings, Inc., No. 17-2219, 2018 WL 3409143, at *3 (2d Cir. July 12, 2018) (holding that the plaintiff defeated New York's mailing presumption by "provid[ing] evidence of his family's regular procedure for reviewing with him the mail he received and assert[ing], with sworn support, that the relevant mailings did not arrive and go through that process").

7

In this case, the plaintiff consented to the modification of CARE in 2015. The plaintiff received, by email, notification of modification of the CARE Arbitration Program and the opportunity to opt out. See Krentzman Decl. ¶¶ 7-9; Krentzman Decl., Ex. 2, ECF No. 23-2. The plaintiff did not opt out and continued to work at Morgan Stanley for six and a half years. See Krentzman Decl. ¶¶ 17-18. The evidence establishes that the plaintiff received the email, the email adequately set forth the essential terms of Morgan Stanley's expansion of the CARE program, and the email provided convenient ways -- through hyperlinks and an email address for employees to direct questions -- for the plaintiff to inquire about the changes to the CARE program and to opt out of the program. See Krentzman Decl., Ex. 2, ECF No. 23-2. Thus, there was a valid and enforceable contract binding both parties to resolve claims covered by Agreement through arbitration.

**B.**

The next question is whether the plaintiff's alleged wrongful termination, discrimination, and retaliation claims pursuant to Section 1981 and the ADA are covered by the scope of the CARE Agreement. The Court finds that they are.

The issue of whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination. See Loc. Union 97, Int'l Bhd. of Elec.

Workers, AFL-CIO v. Niagara Mohawk Power Corp., 67 F.4th 107, 112 (2d Cir. 2023) (citing Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010)). However, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Id. at 112-13. Because "arbitration is a matter of contract, arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." Id. at 113 (citing AT&T Techs., Inc. v. Commc'ns. Workers of Am., 475 U.S. 643, 648-49 (1986)). Courts rely on ordinary principles of contract interpretation to guide the inquiry into whether the parties consented to arbitrate a particular dispute. See id. at 113; see also M & G Polymers USA, LLC v. Tackett, 574 U.S. 427, 435 (2015); CNH Indus. N.V. v. Reese, 138 S. Ct. 761, 763-65 (2018) (per curiam). Courts can no longer rely on broad arbitration clauses to presume arbitrability in the first instance. See Loc. Union 97, 67 F.4th at 114. Rather, they must consider the intent of the parties. See id.

In this case, the Agreement unambiguously covers the plaintiff's claims. The plain terms of the Agreement state that it covers "any and all claims or disputes . . . arising out of or which arose out of or in any way relate to [the employee's] employment . . . or the termination thereof." Krentzman Decl.,

9

Ex. 3, ECF No. 23-3 at 1. The Agreement also states that "Covered Claims include but are not limited to . . . statutory discrimination [claims] . . . and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized." Id. The record shows that the plaintiff's claims are all covered by this language. Her claims "ar[i]se out of or[,]" at minimum, "relate to [her] employment . . . or the termination thereof." Id. The plaintiff's amended complaint states that "Morgan Stanley unlawfully terminated Plaintiff Galanova's employment effective January 12, 2022." Am. Compl., ECF No. 9 at ¶ 17. Moreover, the plaintiff's claims arising under Section 1981 and the ADA are "federal . . . law claims or causes of action" covered by the Agreement. See, e.g., Lawrence v. Sol G. Atlas Realty Co., 841 F.3d 81, 83 (2d Cir. 2016) ("Claims under Section 1981 . . . may be made subject to arbitration."); LeDeatte v. Horizon Media, 571 F. Supp. 3d 72, 76 (S.D.N.Y. 2021) ("[C]ourts in this Circuit have repeatedly held that Congress did not intend that . . . ADA claims be nonarbitrable."). Accordingly, the terms of the Agreement make it clear that the parties consented to submit the plaintiff's claims to arbitration.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the defendants' motion to compel arbitration is **granted**. This case is **stayed** pending the conclusion of the arbitration. The Clerk of Court is directed to close ECF No. 21 and this case on the active docket of the Court subject to reopening within thirty (30) days after the conclusion of the arbitration.

**SO ORDERED.**

Dated:   New York, New York
         September 22, 2023

_____
John G. Koeltl
**United States District Judge**